**HIONIS INTERNATIONAL ENTERPRISES, INCORPORATED, and A–Hionis, Ltd., Plaintiffs,**

v.

**The TANDY CORPORATION, Defendant.**

**Civ. A. No. 93–288–JLL.**

United States District Court, D. Delaware.

Oct. 12, 1994.

Kevin W. Gibson, of Kassab, Archbold, Jackson & O'Brien, Wilmington, DE, for plaintiffs.

F.L. Peter Stone, of Connolly, Bove, Lodge & Hutz, Wilmington, DE (James B. Spisak, of The Tandy Corp., Fort Worth, TX, of counsel), for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

### I. INTRODUCTION

Defendant, The Tandy Corporation ("Tandy"), has moved for summary judgment against plaintiffs, Hionis International Enterprises, Inc. and A–Hionis, Ltd., pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Item ["D.I."] 19.) Plaintiffs bring this action against Tandy alleging the following: First and Second Claims, breach of contract; Third Claim, breach of fiduciary duty; Fourth Claim, fraudulent misrepresentation; and Fifth Claim, negligent misrepresentation. (D.I. 1.)

Plaintiff Hionis International Enterprises, Inc., is a Pennsylvania corporation. Plaintiff A–Hionis, Ltd. is a Greek corporation. Tandy is a Delaware corporation. The amount in controversy exceeds fifty-thousand dollars, exclusive of interest and costs. This Court's jurisdiction is based on diversity of citizenship in accordance with 28 U.S.C. § 1332. (D.I. 1.)

For the reasons set forth below, Tandy's motion for summary judgment will be granted.

### II. FACTS

Hionis International entered into a Distribution Agreement and a License Agreement with Tandy on December 17, 1991. (D.I. 1, Exs. A & B.) The purpose of these agreements was to allow Hionis International to open Radio Shack stores in six cities in Greece. Under the terms of the License Agreement, Hionis International was permitted to use "Radio Shack" and other marks in certain cities in Greece, including Athens, for a period of one day shy of three years with

an option to renew for another period of three years minus a day. (D.I. 1, Ex. B, ¶ IV.) The License Agreement also regulated the display of the Tandy marks, and stated standards for operation of the stores, among other provisions. Under the terms of the Distribution Agreement, Hionis International agreed to purchase various minimum amounts of Tandy merchandise for resale in its stores in Greece for a period of three years with an option to renew for another three years. (D.I. 1, Ex. A, ¶ V.) During these three year periods, Tandy agreed not to open any other dealers in the six cities awarded to Hionis. (D.I. 1, Ex. A, ¶ VI.)

Both agreements contained assignability clauses which contemplated Hionis International's assignment of its rights, authority, and obligations to a corporation formed under the laws of Greece. The Greek corporation was formed and was named A–Hionis, Ltd., the co-plaintiff. (D.I. 1 at 2.) Because the agreements control the rights of both plaintiffs in the exact same way, and because the plaintiffs allege Tandy committed the exact same tortious acts against both, the plaintiffs will be collectively referred to as "Hionis" for the remainder of this opinion.

Hionis opened its Athens store in May 1992, and opened a second store in Ioanina/Agrinio in January 1993. In December 1992, a competitor of Hionis, "Sakiotis S.A.," began advertising and selling Tandy products in its store in Athens. (D.I. 1, ¶ 13.) Hionis first claimed in the complaint that Tandy violated the parties' agreements by authorizing Sakiotis to distribute Tandy products. However, nowhere in the briefing papers for this motion does Hionis controvert Tandy's claim that it did not authorize Sakiotis to sell Tandy products. (D.I. 22, ¶ 4.) In its answering brief, Hionis shifts its position to claiming Tandy was in breach because it did not take affirmative steps to stop Sakiotis from advertising and selling those products. (D.I. 34 at 9.) Hionis bases this right on affidavit and deposition evidence now before the Court. (*Id.* at 9–13.)

Rather than Tandy, it is apparent a company named InterTAN dealt with Sakiotis. (D.I. 23, ¶ 2.) InterTAN was created as a corporate spin off from Tandy in 1986. (D.I.

21, ¶ 2.) While InterTAN originally had authority to open a distributor in Greece, Tandy and InterTAN agreed to terminate that right in November 1990. (*Id.*)

Hionis further alleges that Tandy either intentionally or negligently misrepresented to Hionis that there were no other authorized Tandy distributors in Greece at the time Hionis and Tandy entered into their agreements. (D.I. 1, ¶¶ 27–40.)

## III. *DISCUSSION*

▉ Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The appropriate inquiry is whether there is a need for a trial. "In other words, [are] there any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

▉ In a motion for summary judgment it is the party seeking summary judgment who bears "the initial responsibility of informing the Court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The Supreme Court has further held that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2511. (Citation omitted.) The standard for summary judgment "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)." Id. at 250, 106 S.Ct. at 2511. The inquiry is "whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512. Justice White, writing for the Court, clarified the standard as follows:

> If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." (Citations omitted; emphasis in original.)

*Id.* at 252, 106 S.Ct. at 2512. Highly relevant to the disposition of this case is the fact that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon a motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

### A. *First and Second Claims*

The First and Second Claims both allege breach of contract but the First Claim asks for damages while the Second Claim asks for the equitable remedy of recision. (D.I. 1, ¶¶ 19 & 22.) Accordingly, they will be discussed together.

██ A federal district court sitting in diversity must apply the choice of law rules of the state in which it sits to determine which state's law governs the controversy

before it. *Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 4, 96 S.Ct. 167, 168, 46 L.Ed.2d 3 (1975); *Klaxon Co. v. Stentor Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Therefore, this Court must apply the State of Delaware's choice of law rules. Delaware courts apply the modern "most significant relationship" test of the *Restatement (Second) of Conflicts* § 188 (1971) to resolve conflicts issues arising out of the interpretation and validity of contracts. *Travelers Indem. Co. v. Lake,* 594 A.2d 38, 41 (Del.1991). Delaware choice of law rules also rely on *Restatement (Second) of Conflicts of Law* § 187 for the proposition that "the parties' choice of law, as expressed in their agreement, will be upheld unless the state whose law would control in the absence of a choice has a materially greater interest in the subject matter." *Rosenmiller v. Bordes,* 607 A.2d 465, 468 (Del.Ch.1991) (citing *Wilmington Trust Co. v. Wilmington Trust Co.,* 24 A.2d 309, 313 (Del.1942). Thus, "under Delaware law, express choice of law provisions in contracts are generally given effect." *A.I.C. Ltd. v. Mapco Petroleum Inc.,* 711 F.Supp. 1230, 1237 (D.Del.1989). Both contracts in this case have an express choice of law provision. (D.I. 1, Exs. A & B.) That choice was Texas. This Court finds no reason to disturb the parties' choice.

██ The crux of Hionis's argument with regard to the first two claims is that Tandy breached the Distribution and License Agreements by refusing to protect Hionis's "exclusive territory" in Greece. (D.I. 1, ¶ 18.) During his deposition, Mr. Alexander Hionis (the president of Hionis International) was asked the basis of his belief that Tandy had granted an exclusive territory. He identified the final draft of the Distribution Agreement as the source for that belief. (D.I. 20 at A–136.) He also went on to say that he thought the grant of the exclusive territory meant he would be free from any competition from Tandy products from any other sources. (*Id.* at A–137.) On the other hand, Tandy points out that, when asked, Mr. Hionis stated that Tandy had not violated the License Agreement in any way. (*Id.* at A–131 to A–132.)

The relevant portion of the Distribution Agreement is, paragraph VI, which reads in its entirety:

### Area of Responsibility

DISTRIBUTOR has not been granted an exclusive trade area for TANDY products under the terms hereof, and TANDY reserves the unrestricted right to determine locations for the establishment of Future Authorized Sales Centers, TANDY company-owned stores or other outlets. However, TANDY will not open any dealers in the Territory for a period of thirty-six (36) months from the date of execution of this Agreement, provided that DISTRIBUTOR is not in default under this Agreement.

(D.I. 1, Ex. A.) In order to guide the Court in interpreting this paragraph, Hionis directs the Court's attention to affidavits of Mr. Hionis and Mr. Koorosh Vafadari, a former Tandy employee from the International Division. The Court declines to consider the affidavits, and, instead, will apply the agreement as written.

■ The law of Texas is unequivocal: "The parol evidence rule precludes consideration of extrinsic evidence to contradict, vary, or add to the terms of an unambiguous written agreement absent fraud, accident, or mistake." *Gold Kist, Inc. v. Carr,* 886 S.W.2d 425, 429 (Tex.Ct.App.1994) (citing *Kuper v. Schmidt,* 161 Tex. 189, 338 S.W.2d 948, 952 (1960)).[1] Such precluded evidence includes communications and negotiations prior to the execution of the written contract because they are deemed to be merged into the written agreement. *Texas Export Dev. Corp. v. Schleder,* 519 S.W.2d 134, 137 (Tex.Civ.App. 1974). This rule is all the more applicable where the written contract contains a merger

clause stating that the contract represents the parties' entire agreement. *Ragland v. Curtis Mathes Sales Co.,* 446 S.W.2d 577, 579 (Tex.Civ.App.1969).

The Distribution Agreement contains a merger clause. It states, in pertinent part: "All prior negotiations and agreements between the parties hereto with respect to the subject matter of this Agreement are hereby merged herein and no statement, agreement or understanding, oral or written, not contained herein will be recognized or enforced." (D.I. 1, ¶ VIII.E.) Thus, absent some ambiguity in paragraph VI (Area of Responsibility) of the Distribution Agreement, this Court must apply the parol evidence rule.

■ Whether a contract is ambiguous is "a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Coker v. Coker,* 650 S.W.2d 391, 393–94 (Tex.1983). "A contract is ambiguous when its meaning is genuinely uncertain and doubtful or when it is reasonably susceptible to more than one meaning." *Gold Kist,* 886 S.W.2d at 429. If a court can interpret a contract's meaning with certainty, there is no ambiguity; and the construction of the contract becomes a matter of law. *Id.*

The language of paragraph VI could not be any clearer. Tandy did not grant Hionis an "exclusive territory within which the plaintiff's [*sic*] would be protected." (D.I. 34 at 9.) Accordingly, this Court finds as a matter of law that Tandy did not breach any promise to protect Hionis from competition because it made no such promise. The parol evidence of Messrs. Hionis and Vafadari[2] is

---

1. Even though termed a rule of evidence, and thus at first blush appears procedural, courts have long classified the parol evidence rule as substantive, so reference to Texas law is proper under *Erie R.R. Co. v. Thompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See Wootton Hotel Corp. v. Northern Assur. Co.,* 155 F.2d 988, 990 (3d Cir.), *cert. denied,* 329 U.S. 758, 67 S.Ct. 111, 91 L.Ed. 654 (1946); *Commissioner v. Danielson,* 378 F.2d 771, 779 (3d Cir.1967).

2. On October 4, 1994, this Court received a document from Hionis's counsel entitled "Plaintiff's Sur Reply to Defendant's Reply Brief in Support of Defendant's Motion for Summary Judgment." Such a filing is improper absent prior approval by the Court according to Local Rule 7.1.1.(c). No approval was sought or granted, therefore, Tandy's Reply Brief should have been the last filing on this motion.

Aside from the fact that the Sur Reply should not have been filed, it couldn't be considered by

irrelevant to this inquiry.[3]

■■ Hionis also contends that the interests of Tandy and InterTAN are so closely related that responsibility for InterTAN's actions should be attributed to Tandy, and when InterTAN began to supply Sakiotis, it was the same as Tandy supplying Sakiotis. Such a conclusion is unwarranted based on the present record. Hionis's support for its argument is virtually nonexistent. Rather than point to specific legally significant facts demonstrating a unity of identity between Tandy and InterTAN, Hionis attempts to show this relationship by referring to a loan agreement between Tandy and InterTAN executed in June of 1993 whereby Tandy became a creditor of InterTAN. (D.I. 34, Ex. C.) Hionis further argues that the existence of this agreement is evidence from which a jury could conclude that Tandy is responsible for InterTAN's actions. Hionis has not cited, nor is this Court aware of, any controlling authority which holds that such a loan agreement is sufficient evidence from which a jury could find a unity of identity between the creditor and debtor. Nor has Hionis cited any authority which supports its unstated assumption that whether Tandy is responsible for InterTAN's actions is a question of fact rather than law. This attempt falls short of the opposing party's burden under Rule 56(c). *See Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. Therefore, summary judgment for Tandy on the First and Second Claims is appropriate.

## B. *Third Claim*

■■ Hionis's Third Claim alleges that Tandy breached a fiduciary duty because of their "special and close" relationship. (D.I. 1, ¶ 24.) In support of this, Hionis points to a line of Texas insurance cases which recognize an implied covenant of good faith and fair dealing where a special relationship between the parties was created or governed by a contract. *E.g., Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (1987).[4] Hionis argues that the Tandy/Hionis relationship is subject to the implied duty of good faith and fair dealing recognized in *Arnold.* This position is not supported in Texas law.

■■ The general rule in Texas is that the tort cause of action for breach of the duty of good faith and fair dealing does not apply to ordinary commercial contractual relationships. *Adolph Coors,* 780 S.W.2d at 481. Indeed, the *Coors* court refused to extend it beyond the insurer/insured context to the supplier/distributor relationship, arguably the relationship that existed between Tandy and Hionis. *Id.* Texas courts have also refused to extend it to the employer/employee, creditor/guarantor, mortgagor/mortgagee, and bank/borrower contexts. *Wheeler v. Yettie Kersting Mem. Hosp.,* 866 S.W.2d 32, 52 (Tex.Ct.App.1993) (collecting cases).

While ignoring the *Coors* decision, Hionis assumes without argument or citation to authority that Texas courts would find the Hionis/Tandy relationship is that of a fran-

---

this Court anyway. It contains the affidavit of Mr. Edward Kassab, Hionis's attorney who negotiated the agreements with Tandy. Mr. Kassab attests to his understandings of the agreements. The Court will not consider Mr. Kassab's statements as they are also barred by the parol evidence rule.

**3.** Hionis also argues in its First and Second Claims that Tandy breached an implied covenant of good faith and fair dealing. This contractual obligation only arises in the course of performing one's duties under the contract. *See Adolph Coors, Co. v. Rodriguez,* 780 S.W.2d 477, 480–82 (1989). Since Tandy had no duty to protect Hionis's trade area, the good faith standard for performance is inapplicable.

**4.** The *Arnold* court also recognized that the cause of action sounded in tort, not contract, even

though the reason courts impose such a duty is because of a contractual relationship. The reason the duty exists and the remedy for its breach are two separate questions. The Court makes note of this point because the parties have merely assumed that Texas law still controls the tort causes of action in the Third Claim as well as the Fourth and Fifth Claims, even though the choice of law provision in the agreements only applies to the "interpretation" of those agreements. (D.I. 1, Ex. A, ¶ VIII.H & Ex. B, ¶ VI.H.) Since the parties don't disagree, the Court will continue to apply Texas law. The Court also notes that the choice of law analysis employed by Delaware courts for tort claims, as with contract claims, dictates the Restatement's (Second) most significant relationship test. *Travelers Indemnity,* 594 A.2d at 44–47. If pressed, this Court would find Texas has the most significant relationship. Thus, its law is the appropriate choice.

chisor/franchisee rather than supplier/distributor. Such a characterization of the relationship could perhaps avoid the effect of the *Coors* holding. Hionis goes on to recognize, however, that Texas courts have yet to extend the duty of good faith and fair dealing to such a relationship. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 596 (1992); *Wheeler*, 866 S.W.2d at 52. Hionis attempts to distinguish this adverse precedent and argues the only reason the *Crim Truck* court did not extend the duty of good faith and fair dealing in that case was because the specific relationship of the parties was controlled by statute. (D.I. 34 at 14–15.) Hionis further argues that, absent this statutory scheme, Texas courts would find a special relationship similar to the *Arnold* insurance context and impose the duty of good faith and fair dealing on Tandy in this context. Hionis's first premise is only half right and their second premise is contradicted by *Crim Truck* itself.

While it is true the court found that a statutory scheme adequately protected the franchisee in *Crim Truck*, the court also addressed the contention that the duty of good faith and fair dealing should apply to all franchise contracts because franchisors necessarily have superior bargaining power over franchisees. The court rejected this broad proposition. 823 S.W.2d at 596 n. 8. It also found that there was no evidence in that case to support the claim that the "franchisor exerted control over its franchisee's business comparable to that exerted by an insurer over its insured's claims." *Id.* The insurer's control which the Texas Supreme Court in *Arnold* found sufficient to impose the duty of good faith and fair dealing included the ability to "arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed." *Arnold*, 725 S.W.2d at 167. Furthermore, "an insurance company has exclusive control over the evaluation, processing and denial of claims." *Id.* In light of the *Crim Truck* and *Coors*

decisions, this Court is not convinced Texas courts would extend application of the duty of good faith and fair dealing and apply it for the first time in this context, whether termed franchisor/franchisee or supplier/distributor. Accordingly, summary judgment for Tandy on the Third Claim is appropriate.

## C. Fourth Claim

Tandy has moved for summary judgment against Hionis on the Fourth Claim, fraudulent misrepresentation. In its answering brief, Hionis has not argued anything in opposition to summary judgment on this claim. (D.I. 34.) Therefore, summary judgment for Tandy on the Fourth Claim is appropriate.

## D. Fifth Claim

■ Last, Hionis alleges that Tandy negligently misrepresented to Hionis that it would be the exclusive distributor in Greece for a period of three years.[5] (D.I. 34, ¶ 16.) The Texas Supreme Court has stated the *prima facie* case for negligent misrepresentation:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Federal Land Bank Assoc. of Tyler v. Sloane*, 825 S.W.2d 439, 442 (1991) (citing *Restatement (Second) of Torts* § 552 (1977)). Hionis is unable to make out this *prima facie* case.

In particular, Hionis's claim is insufficient with regard to the second element. It argues that Tandy falsely represented to Hionis that it would be the exclusive distributor in

---

5. Hionis's claim was slightly different in the complaint in that it alleged that Tandy had negligently misrepresented that Hionis would have the exclusive use of the Radio Shack and Tandy trademarks for three years. (D.I. 1, ¶ 35.) This was a misrepresentation, so the complaint goes, because Tandy awarded an exclusive license to the Radio Shack and Tandy trademarks to Sakiotis. The uncontroverted facts now show that Tandy made no such award. (D.I. 23, ¶ 2.) In their answering brief, Hionis has abandoned this theory for the slightly different one discussed above.

six cities in Greece, but that this was false because "Sakiotis was an existing dealer in Greece and Tandy most certainly should have known of his existence" at the time the two parties negotiated and executed the agreements. (D.I. 34 at 16.) The only evidence Hionis offers to support this claim is four pages comprising three documents from the Appendix To Opening Brief In Support Of Defendant's Motion For Summary Judgment. (D.I. 20 at A–36 to A–39.) The first document is a letter written by Ms. Ann Kothman of Tandy to Mr. Sakiotis on January 18, 1991, stating that Tandy would be open to discuss the possibility of Mr. Sakiotis becoming a Radio Shack dealer. (D.I. 20 at A–36.) The second is a letter to Mr. Sakiotis from Mr. Tony Aimone dated February 13, 1991, apparently in response to further inquiry from Mr. Sakiotis, outlining in slightly more detail the nature of the relationship Tandy envisioned with a dealer in Greece. (D.I. 20 at A–37.) The next two pages were included with Mr. Aimone's letter and comprise a *pro forma* invoice, not an actual invoice. No reasonable jury could find by a preponderance of the evidence that these documents prove Mr. Sakiotis was operating as a Tandy distributor when Hionis and Tandy executed their agreement. *See Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. Equally as important is Hionis's own admission in its complaint that Sakiotis did not commence operation as a Radio Shack store until December, 1992, one year *after* Hionis and Tandy executed their contract. (D.I. 1, ¶ 13.) This admission completely contradicts Hionis's allegation in its Answering Brief that Sakiotis was an existing dealer in Greece when Tandy and Hionis negotiated and executed their agreements. Accordingly, summary judgment for Tandy on the Fifth Claim is appropriate.

## IV. CONCLUSION

For the reasons set forth above, this Court will grant defendant Tandy's motion for summary judgment. A judgment will be entered forthwith in accordance with this opinion.