Mark T. **KONDRATH** and Dave Tiberi, Plaintiffs,

v.

Bob **ARUM**, Top Rank, Inc., Bob Lee, International Boxing Federation, Inc., Ron Katz, Larry Hazzard, Robert Palmer, Frank Garza, Bill Lerch, Industria Reyes, S.A., and Does 1 Through 8, Defendants.

Civ. A. No. 94–217–JLL.

United States District Court,
D. Delaware.

March 27, 1995.

David P. Cline, Wilmington, DE (Edward Brigham, Towson, MD, of counsel), for plaintiffs.

David A. Jenkins, and Michele C. Gott, of Smith, Katzenstein & Furlow, Wilmington, DE (Ike Lawrence Epstein, of Beckley, Singleton, DeLanoy, Jemison & List, Chtd., Las Vegas, NV, of counsel), for defendants Bob Arum, Top Rank, Inc., and Ron Katz.

David A. Jenkins, and Michele C. Gott, of Smith, Katzenstein & Furlow, Wilmington, DE (Walter R. Stone, and Sherry A. Giarrusso, of Adler, Pollock & Sheehan, Providence, RI, of counsel), for defendants Intern. Boxing Federation, Inc., Robert Palmer, Frank Garza, and Bill Lerch.

## OPINION

LATCHUM, Senior District Judge.

### I. INTRODUCTION

Plaintiffs bring this action alleging violations of the federal RICO statute, the New Jersey Racketeering statute, violations of various fiduciary duties, fraud, breach of contract, and are also seeking a declaratory judgment under 28 U.S.C. § 2201.

Presently before the Court are defendants Arum, Top Rank, Inc. ("Top Rank"), Lee, International Boxing Federation, Inc., ("IBF"), Katz, Garza, and Lerch's motion to dismiss, or in the alternative, to transfer, (Docket Item ["D.I."] 20), and defendant Palmer's motion to dismiss, or in the alternative, to transfer (D.I. 35).[1] The defendants have filed their opening and reply briefs. (D.I. 21 & 27.) The plaintiffs filed their answering brief as well. (D.I. 24.) The Court heard oral argument on the issues raised in the motion and these briefs on March 2, 1995.[2]

Also before the Court are the plaintiffs' motion for limited early discovery, (D.I. 32),

with an accompanying brief in support of that motion, (D.I. 33), defendants' answering brief, (D.I. 34), and the plaintiffs' reply brief (D.I. 36).

For the reasons below, the Court will grant the defendants' motion to transfer and will dismiss as moot plaintiffs' motion for limited early discovery and an evidentiary hearing.

### II. FACTS

The plaintiffs allege that the defendants have been members of a "RICO Enterprise" ("Enterprise") for at least the last ten years. Garza, Lerch, and Palmer have been members of the Enterprise for fewer than ten years, however. (D.I. 6, ¶ 22.) They further allege that the Enterprise "fixes" IBF fights so that the IBF champion will retain his title in order to increase popular interest in the current champion, which, in turn, increases the profitability of fights involving that champion. (*Id.*, ¶¶ 41–47.)

#### A. The Parties

Plaintiff Dave Tiberi is a professional boxer who is a citizen and resident of Delaware. (*Id.*, ¶ 9.) Plaintiff Mark Kondrath is a manager of professional boxers, including Tiberi, and is a citizen and resident of Pennsylvania. (*Id.*, ¶ 8.)

Defendant Bob Arum is a professional boxing promoter and is a citizen of Nevada, residing in Las Vegas, Nevada. (*Id.*, ¶ 10.) Top Rank is a corporation engaged in the business of promoting professional boxing. It is incorporated in Nevada and has its principal place of business in Las Vegas, Nevada. (*Id.*, ¶ 20.) Bob Lee is the president of the IBF and is a citizen of New

---

1. Mr. Palmer filed his motion after the briefing on the first group of defendants' motion had been completed and incorporated the legal arguments raised in that motion. (D.I. 35 at 1.) Accordingly, his motion will be considered as if he had joined in the initial motion.

2. After the defendants filed their reply brief, the plaintiffs filed a motion for leave to file a sur-reply brief, (D.I. 30), and the sur-reply brief itself, (D.I. 31), concurrently on February 16, 1995. Local Rule 7.1.2.(c) prohibits a party from filing a sur-reply brief without prior approval of the court, unless the brief advises the court of

cases decided after the final brief was filed or after oral argument. The Court has not considered these briefs in deciding this motion because the plaintiffs did not seek approval of the Court prior to filing the sur-reply brief. Since approval was neither sought nor granted before the plaintiffs filed their sur-reply brief, that filing was improper. *Cf. Travelers Ins. Co. v. Buffalo Reinsurance Co.*, 735 F.Supp. 492, 495 (S.D.N.Y. 1990). Furthermore, the brief does not advise the Court of any relevant cases decided after the defendants filed their reply brief.

Jersey, residing in East Orange, New Jersey. (*Id.*, ¶ 17.) The IBF is an organization which sanctions professional fights. It is incorporated in Rhode Island and has its principal place of business in East Orange, New Jersey. (*Id.*, ¶ 15.) Ron Katz is a matchmaker employed by Top Rank and is a citizen of New York, residing in New York City. (*Id.*, ¶ 16.) Larry Hazzard is the Commissioner of the New Jersey State Athletic Control Board ("NJSACB"), a state agency functioning as the official boxing commission of New Jersey. He is a citizen of New Jersey, residing in Atlantic City, New Jersey. (*Id.*, ¶ 13.) Robert Palmer is a referee of professional boxing matches and is a citizen of New Jersey, residing in Atlantic City, New Jersey. (*Id.*, ¶ 19.) Frank Garza is an IBF fight judge and is a citizen of Michigan, residing in Southgate, Michigan. (*Id.*, ¶ 12.) Bill Lerch is also an IBF fight judge and is a citizen of Illinois, residing in Des Plaines, Illinois. (*Id.*, ¶ 18.) Industria Reyes, S.A. ("Reyes") is a manufacturer of boxing gloves and other boxing equipment. It is incorporated in Mexico and has its principal place of business in Mexico City. (*Id.*, ¶ 14.) Does 1–8 are presently unidentified, but the plaintiffs do state that none is a citizen of or resides in Delaware. (*Id.*, ¶ 11.)

### B. The Events

The defendants alleged wrongs can be divided into three discreet classes: (1) events before the Toney–Tiberi fight; (2) events which occurred during the fight; and (3) events after the fight.

### 1. Before the Fight

Sometime in December 1991, the Enterprise decided it wanted to promote a title fight between the IBF champion Toney and another, as yet, undetermined fighter. (*Id.*, ¶¶ 55–57.) The purpose of this fight was to generate interest in two fights that had been scheduled between Toney and two other fighters for April and September, 1992. (*Id.*, ¶ 54.) The Enterprise directed a matchmaker, Katz, to find an opponent that Toney could beat, and he chose Tiberi. (*Id.*, ¶¶ 57, 62.) In order to recruit Tiberi for the fight, Katz, who was in Garden City, New York,

phoned Tiberi's manager, Kondrath, in Pennsylvania, who agreed that Tiberi would fight Toney on February 8, 1992 in Atlantic City, New Jersey. (*Id.*, ¶¶ 63–64.)

At that time, Tiberi was the IBC (a Florida-based boxing organization) middleweight champion. In order to conform to the IBF rules, Katz instructed Kondrath that Tiberi would have to relinquish his IBC title in order to fight in an IBF-sanctioned match. (*Id.*, ¶ 67.) Tiberi relinquished that title via a letter to the IBC mailed on December 18, 1991. (*Id.*, ¶ 68.) Also on that day, Tiberi and Kondrath sent a letter to the IBF requesting that they rank Tiberi among the IBF's "top 10" fighters so that he would be eligible to fight in an IBF-sanctioned title bout. (*Id.*, ¶ 69.) Over the next several days, pursuant to various communications between Katz, in New York, and IBF Commissioner Lee, in New Jersey, the IBF ranked Tiberi in its top 10. (*Id.*, ¶¶ 70–73.) And on December 20, Arum, on behalf of Top Rank, faxed to Kondrath's business office in Pennsylvania a contract which would obligate Tiberi to fight in a succession of title defenses in the event he won the Toney–Tiberi fight. Tiberi and Kondrath executed that contract in Pennsylvania. (*Id.*, ¶¶ 73–74.)

Plaintiffs also allege a series of communications among members of the Enterprise and various advertisers of products whose commercials were scheduled to be shown during the Toney–Tiberi fight, although the plaintiffs do not say where they believe the participants in these conversations were located. (*Id.*, ¶ 75.) They further allege that various members of the Enterprise engaged in another series of communications, all with at least one party in New Jersey and none in Delaware, in order to allow Garza and Lerch to serve as fight judges for the Toney–Tiberi fight, even though neither is licensed in New Jersey. (*Id.*, ¶¶ 76–78.) On February 3, 1992, Arum, from Las Vegas, telephoned a reporter for *The News Journal* in Delaware and told him that Tiberi had a good chance of beating Toney. (*Id.*, ¶¶ 80–83.)

Finally, plaintiffs allege that, from December 10, 1991 through February 8, 1992, Katz, from his office in New York, made a series of phone calls to Kondrath in Pennsylvania and

New Jersey to monitor Tiberi's training and condition for the Toney–Tiberi fight. (*Id.*, ¶ 84.) Based on these conversations, Katz concluded that Tiberi could win the fight by a knockout, and alerted the Enterprise that they would have to sabotage Tiberi's gloves to prevent this. (*Id.*, ¶¶ 85–86.) After communications among various members of the Enterprise, the Enterprise communicated with Reyes employees in Mexico and sought their advice and help in sabotaging the gloves Tiberi would be using in the Toney–Tiberi fight. (*Id.*, ¶ 87.)

### 2. Events During the Fight

First, plaintiffs allege that Commissioner Hazzard illegally allowed Garza and Lerch to judge the fight even though they were not licensed in New Jersey, and that Garza and Lerch used the IBF scoring system, illegal in New Jersey, to declare Toney the winner. (*Id.*, ¶¶ 89–90, 96.) Second, they allege that members of the Enterprise sabotaged Tiberi's boxing gloves, and that the referee, Palmer, impermissibly allowed Toney to rest while Tiberi changed gloves. (*Id.*, ¶¶ 93–94.) Third, they allege that Palmer incorrectly penalized Tiberi for a low blow which did not occur. Last, Palmer further afforded Toney a rest by stopping the fight in the eleventh round to remove a loose piece of tape from Tiberi's gloves. (*Id.*, ¶ 94.)

### 3. Events After the Toney–Tiberi Fight

The post-fight events the plaintiffs complain of all relate to the Enterprise's efforts to conceal the fact that the Toney–Tiberi fight was fixed. First, Mr. Arum held a press conference in New Jersey where he made several fraudulent misrepresentations concerning the fight and Tiberi's reaction to a proposed rematch. (*Id.*, ¶¶ 102, 109.) Second, the Enterprise caused Hazzard to testify falsely before a Senate Subcommittee investigating professional boxing. (*Id.*, ¶ 110.) Third, the Enterprise caused the IBF and the NJSACB to fail to investigate the fight. (*Id.*, ¶¶ 111–23, 139.) Finally, the plaintiffs allege the Enterprise caused letters signed by Lee to be sent to then-Governor Castle and then-Representative Carper concealing

the IBF's role in fixing the fight. (*Id.*, ¶¶ 126–30, 134–37.)

### III. DISCUSSION

Because the Court disposes of this motion by transferring the case pursuant to 28 U.S.C. § 1404(a), defendants' motion to dismiss pursuant to Rules 12(b)(2) & (3) of the Federal Rules of Civil Procedure is therefore rendered moot. *See Manufacturers Buyers Corp. v. El Dorado Tire Co.*, 324 F.Supp. 225, 227 (1971). Accordingly, the Court now turns to the motion to transfer.

■ Title 28, United States Code, § 1404(a) provides: "For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Before ordering transfer, this Court must determine that the suit could have been brought in New Jersey. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir.1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). Thus this Court must determine that a New Jersey court will have personal jurisdiction over the defendants and that venue is proper in New Jersey.

### A. Alternate Forum

■ The RICO statute provides for nationwide service of process. 18 U.S.C. § 1965(d); *Dooley v. United Technologies Corp.*, 786 F.Supp. 65, 70–71 (D.D.C.1992) (collecting cases). *See also Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F.Supp. 1040, 1055 n. 10 (S.D.N.Y.1987) (recognizing that the somewhat comparable language of § 1965(b) only applies to venue determinations and is not a limit on the court's nationwide service of process power). Under a nationwide service of process statute, a court may exercise jurisdiction as long as the defendant has minimum contacts with the United States. *Dooley*, 786 F.Supp. at 71. The allegations in the complaint clearly establish all the defendants have minimum contacts with the United States. Thus, a New Jersey federal court will have personal jurisdiction over all the defendants. Indeed, all the defendants who join in this motion

concede that they have minimum contacts with New Jersey. (D.I. 21 at 32–35.)

■ Venue over the plaintiffs' RICO claims is controlled by both the venue provisions of the RICO statute, 18 U.S.C. § 1965 ("§ 1965"), and the general federal venue provisions, 28 U.S.C. § 1391 ("§ 1391"). *Farmers Bank of Delaware v. Bell Mortgage Corp.*, 452 F.Supp. 1278, 1280–81 (D.Del. 1978). Because venue in New Jersey is so obviously proper under § 1391(b)(2) this Court finds it unnecessary to resort to the special RICO venue provision.

■ Section 1391(b)(2) provides: "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may ... be brought ... in ... a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred...." Many of the pre-fight events occurred at least partly in New Jersey, the fight took place in New Jersey, and many of the post-fight events took place in New Jersey. The Court finds that these events form a substantial part of the events and omissions which gave rise to the plaintiffs' claims.

■ The Court also notes that, in their brief, defendants argue that venue is proper in New Jersey. (D.I. 21.) Because of this concession, the defendants would be estopped from later arguing that venue is improper in New Jersey, although the Court believes it unlikely the defendants would try to make such an argument.

■ Once a court establishes that the suit might have been brought in the proposed transferee district, the court has the power to transfer the suit to that district as a matter of discretion. The question then becomes whether, for the convenience of the parties and the witnesses, and in the interests of justice, the court should exercise that discretion and transfer the suit. *Chrysler Capital Corp. v. Woehling*, 663 F.Supp. 478, 482 (D.Del.1987).

### B. Convenience Of The Parties And Witnesses

■ The party moving for transfer under § 1404(a) bears the burden of persuading the court that the balance of convenience is strongly in favor of the defendant. *Shutte*, 431 F.2d at 25. When weighing the convenience to the defendant the court must also consider the increased inconvenience to the plaintiff of litigating in the transferee forum. When the increased convenience to the defendants is great and the increased inconvenience to the plaintiffs is slight, the balance tips toward the defendants. *Minstar, Inc. v. Laborde*, 626 F.Supp. 142, 146 (D.Del.1985).

In this case, three of the ten defendants, Hazzard, Palmer, and Lee reside in New Jersey, and the IBF has its principal place of business in New Jersey. Furthermore, all the documents under these four defendants' control which are relevant to this suit are in New Jersey. New Jersey is also more convenient for Mr. Katz, who lives in New York, which is where he keeps the relevant documents under his control as well. The remaining five defendants will have to travel a substantial distance, *e.g.*, Arum from Nevada, regardless of whether New Jersey or Delaware is the forum for this action; the (in)convenience of both fora is the same for them.

On the other hand, the only party to this action for whom Delaware would be more convenient is one of the plaintiffs, Tiberi. The other plaintiff, Kondrath, resides in Pennsylvania, so he will have to travel to either forum. Thus, plaintiffs are only minimally inconvenienced with a transfer to New Jersey.

■ Finally, the witnesses' convenience is also generally increased. First, most of the parties will be witnesses, and what is true for them as parties is true for them as witnesses in this context. Second, the IBF has identified several important non-party witnesses whom they expect to testify in their affidavit filed with the instant motion. (D.I. 22 at A–13 to A–14.) They include, but, the IBF notes, are not limited to: (1) Marion Muhammad, the fight supervisor; (2) members of the New Jersey Athletic Control Board; and (3) Frank Brunette, the third judge of the Toney–Tiberi Fight. (*Id.* at A–14.) All of these non-party witnesses are citizens of and reside in New Jersey. (*Id.*)

In sum, the increase in convenience to the defendants and witnesses, by transferring the case to New Jersey, substantially outweighs the increase in inconvenience to the plaintiffs.

### C. Interests Of Justice

The most significant criterion involved in a § 1404(a) motion to transfer is the interests of justice. *Chrysler Capital Corp.*, 663 F.Supp. at 483. The Court must consider four factors: (1) the economic and efficient utilization of judicial resources; (2) the cost to the parties; (3) access to proof; and (4) the availability of compulsory process.

A New Jersey court is a better forum for the efficient utilization of judicial resources in this case. First, two of the plaintiffs' eleven claims for relief, the Third and the Fourth, allege violations of New Jersey's racketeering law. (D.I. 6 at 58–59.) One claim, the Eighth, seeks a declaratory judgment, under 28 U.S.C. § 2201, whereby the plaintiffs ask this Court to declare that the Toney–Tiberi fight was in violation of the New Jersey statute which governs the licensing of boxing judges. All of the other claims—with the exception of the First and Second (federal RICO) claims—are grounded in state law. They are based on isolated wrongs committed in conjunction with the Toney–Tiberi fight as opposed to the federal RICO and New Jersey racketeering claims which allege an on-going enterprise. Although not presently before this Court, choice of law issues will arise with regard to Claims Five through Eleven. On the surface, at least, it appears that New Jersey law will control these state law claims.[3] This fact points to New Jersey as the forum where the claims will be handled most efficiently. *See Van Dusen*, 376 U.S. at 645, 84 S.Ct. at 824.

Second, because this case has not been on this Court's docket for very long, little judicial effort will go to waste by transferring it to a forum unfamiliar with it. *Kirschner Bros. Oil, Inc. v. Pannill*, 697 F.Supp. 804, 808 (D.Del.1988).

The cost to parties and access to proof concerns are the same here as in the convenience analysis discussed above. Here too they point to New Jersey as the more appropriate forum.

Finally, the defendants argue that the witnesses listed in the IBF affidavit, (D.I. 22 at A–14), are not within the subpoena power of this Court, which would weigh in favor of transfer to New Jersey. Plaintiffs reply that those witnesses most assuredly reside within 100 miles of this courthouse. Whether or not this is so is of little practical significance as the interests of justice point towards transfer even assuming all the witnesses are within the subpoena power of this court.

In sum, the convenience of the parties and witnesses will be greatly increased by a transfer of this case to New Jersey, and the interests of justice are greater served by a transfer to New Jersey.

### IV. CONCLUSION

For the reasons stated above, defendants' motion to transfer will be granted; defendants' motion to dismiss will be denied as moot; and plaintiffs' motion for limited early discovery will be denied as moot.

---

3. Where a case involving state law issues is transferred pursuant to a defendant's motion under § 1404(a), the law of the transferor forum, including choice of law rules, controls. *See Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 820–21, 11 L.Ed.2d 945 (1964); *Ferens v. Deere & Co.*, 862 F.2d 31, 34 (3d Cir.1988). Where a federal court exercises supplemental jurisdiction over state law claims, the court must apply the choice of law rules of the state in which it sits. *Ashmore v. Northeast Petroleum*, 843 F.Supp. 759, 772 (D.Me.1994). Delaware courts generally apply the "most significant relationship" test of the *Restatement (Second) of Conflicts. Hionis Int'l Enters., Inc. v. Tandy Corp.*, 867 F.Supp. 268, 271 & 273 n. 4 (D.Del.1994). New Jersey appears to have the most significant relation to the state law claims, thus its law would control even in this forum.