Joseph L. ROSENMILLER, Jr., W.
David Rosenmiller and John
Rosenmiller, Plaintiffs,

v.

Peter A. BORDES and Greater Media,
Inc., a Delaware corporation, De-
fendants–Counterclaimants,

v.

Joseph L. ROSENMILLER, Jr.,
Counterclaim Defendant.

Civ. A. No. 10738.

Court of Chancery of Delaware,
New Castle County.

Submitted: Sept. 19, 1991.
Decided: Oct. 28, 1991.

Martin P. Tully and Brett D. Fallon (Morris, Nichols, Arsht & Tunnell, Wilmington, of counsel), Howard M. Squadron and Neal M. Goldman, Squadron, Ellenoff, Plesent & Lehrer, New York City, for plaintiffs.

Samuel A. Nolen and Anne C. Foster (Richards, Layton & Finger, Wilmington, of counsel), John G. Koeltl, Steven Klugman, Alexander Ewing and Thomas N. Dahdouh, Debevoise & Plimpton, New York City, for defendants-counterclaimants.

HARTNETT, Vice Chancellor.

Plaintiffs, one of whom is the owner of 50% of the voting stock of defendant Greater Media, Inc., moved for summary judgment on their petition (Complaint) for the appointment of a custodian for the corporation pursuant to 8 *Del.C.* § 226. The petition seeks to resolve a stockholder deadlock in the election of directors.

Defendants moved to dismiss plaintiffs' deadlock claim and moved for summary judgment on their crossclaim for specific performance of a stockholder voting agreement.

Defendants' motion for summary judgment on their crossclaim must be denied because under Delaware law the stockholder voting agreement is no longer valid. Although plaintiffs did not cross-move for summary judgment on this issue, they are entitled to it. Plaintiffs' motion for summary judgment on the issue of whether a custodian should be appointed must be denied because there appear to be disputed issues of fact as to whether an election of officers occurred at the last annual meeting.

I.

Plaintiffs, Joseph L. Rosenmiller, Jr., W. David Rosenmiller, and John Rosenmiller, are stockholders of defendant Greater Media, Inc. ("GMI"), a Delaware corporation. W. David and John Rosenmiller own certain non-voting stock, and their father, Joseph Rosenmiller ("Rosenmiller"), owns 50% of GMI's outstanding voting stock. The other 50% of the voting stock is owned or controlled by Peter A. Bordes ("Bordes"), the individual defendant. Bordes is the Chief Executive Officer of GMI, and both he and Rosenmiller are the only directors of the corporation.

Bordes and Rosenmiller began their business relationship in the mid–1950s by managing a radio station together. The business prospered and expanded, and in 1964 they formed GMI. By 1967, Rosenmiller had withdrawn from daily management of the corporation for personal reasons. Bordes continued as Chief Executive Officer and managed GMI through its expansions into cable television and other media. GMI now owns and operates radio stations, cable television systems, newspapers and a printing operation.

On June 30, 1976, Bordes and Rosenmiller executed a shareholders agreement ("Agreement") for estate planning and control sharing purposes. The Agreement provides, in part, that Bordes and Rosenmiller, or their transferees, agree to vote their stock for a board of two directors equally divided between themselves or their respective nominees. It also gives GMI the right to buy Bordes' or Rosenmiller's stock at 110% of book value in the event either of them should decide to sell.

Section 10 of the Agreement provides it "shall be deemed made under, and shall be construed in accordance with, the laws of the State of New Jersey, without giving effect to the conflict of laws provisions thereof."

In 1986, Rosenmiller began considering liquidating his investment in GMI. He objected to the Agreement's formula price of 110% of book value as grossly undervalu-

ing his 50% interest. From 1986 through 1988, Bordes and Rosenmiller attempted to negotiate a different selling price for Rosenmiller's stock, but Rosenmiller rejected Bordes' offers as being inadequate.

As the negotiations between Bordes and Rosenmiller broke down, Rosenmiller decided to take a more active role in the management of GMI. On November 3, 1988, he announced his intention to nominate at the November 15, 1988 stockholder meeting a new slate of directors that did not include Bordes. If that slate could somehow have been elected, Rosenmiller would have obtained control of GMI. Bordes remained committed to electing a board of directors that would evenly divide control between him and Rosenmiller.

By agreement of Bordes and Rosenmiller, the stockholder meeting was postponed until December 15, 1988. On December 9, 1988, Rosenmiller informed Bordes that he intended to sell his stock to his children so that the board would be expanded from two to four directors pursuant to a by-law of GMI that provided for four directors in the event that there were more than two voting stockholders. On the same day, Bordes responded by transferring some of his stock to a trust for the benefit of his children.

On the day of the postponed stockholder meeting, December 15, 1988, Bordes and Rosenmiller executed a stipulation that acknowledged the inability of the stockholders of GMI to elect successor directors and directors for the newly created board positions. The Stipulation provides in pertinent part:

> In view of the deadlock existing between the undersigned in their capacities as stockholders of GMI, the undersigned, or either of them, may apply to the Delaware Court of Chancery to appoint one or more persons to be custodians of and for GMI in accordance with the provisions of Section 226 of the Delaware General Corporation Law. In the event any such application is made, each of the undersigned reserves the right to object to such application being granted.

Pursuant to this section of the Stipulation, Rosenmiller and his sons on April 3, 1989 commenced this action seeking the appointment of a custodian for GMI pursuant to 8 *Del.C.* § 226(a)(1) and (2).

The next stockholder meeting was held on November 15, 1990. (The 1989 stockholder meeting was noticed but not held.) The parties disagree as to whether a vote for the election of directors actually took place at that meeting, although it is clear that the stockholders are still evenly divided as to the future of the corporation.

Plaintiffs have moved for summary judgment on their claim that there is a stockholder deadlock in the election of directors and therefore a custodian should be appointed. Defendants have moved for summary judgment on their crossclaim for the specific performance of the voting restriction contained in the Agreement.

Other motions were also filed which are either moot, not ripe, or without merit.

The parties have engaged in numerous discovery disputes and have apparently sought to cloud the paramount issue in this case—the existence of a deadlock—by various motions and cross motions and arguments. This Court, however, will not allow the procedural morass and the obfuscating claims of the parties to obscure a penultimate issue that is ripe for decision. Although a ruling on the validity of the voting restriction may not change the fact that two families each own 50% of the voting stock of GMI and are unlikely to ever agree on the election of directors, or on the management of the corporation, the issue of the legal effect of the voting restriction is ripe for an adjudication.

## II.

Plaintiffs, in opposing defendants' motion for summary judgment, assert that the validity of the voting restriction set forth in the Agreement must be determined under Delaware law notwithstanding the express choice of New Jersey law by the parties to the contract because all matters of internal governance of a corporation should be subject only to the law of the state of incorporation. The law of Delaware, the state of

incorporation of GMI, limits voting agreements to a term not exceeding ten years. 8 *Del.C.* § 218. The application of Delaware law, therefore, would render the voting restriction unenforceable because it was not extended by the parties and ten years have lapsed since its creation.

Defendants claim that the voting restriction portion of the Agreement has not expired under New Jersey law, however, and that therefore, under the terms of the Agreement, the parties are obligated to continue to vote for a board evenly divided between Bordes' and Rosenmiller's nominees. They further claim that, if this is so, plaintiffs are not entitled to have a custodian appointed.

Defendants argue that New Jersey law rather than Delaware law controls the question of the validity of the voting restriction due to the express choice of New Jersey law in the Agreement itself. They cite *Wilmington Trust Co. v. Wilmington Trust Co.*, Del.Supr., 24 A.2d 309 (1942) for the proposition that Delaware choice of law principles favor the application of the law expressly chosen by the parties to a contract.

Defendants' analysis is only partially correct, however. The Court in *Wilmington Trust* relied on § 187 of the *Restatement (Second) of Conflicts of Laws*. That section provides that the parties' choice of law, as expressed in their agreement, will be upheld unless the state whose law would control in the absence of a choice has a materially greater interest in the subject matter. If that is the case, the law of the state with the greater interest will control the outcome of the dispute, and the express choice of law will be of no consequence.

It is well settled that, under the internal affairs doctrine, the state of incorporation has the paramount interest in having disputes of internal corporate governance resolved according to its own laws. *Ringling v. Ringling Bros.–Barnum & Bailey Combined Shows, Inc.*, Del.Ch., 49 A.2d 603, 607 (1946). Nothing is more central to the internal management of a corporation than a stockholder's right to vote in the election of directors. *Palmer v. Arden-*

*Mayfair, Inc.*, Del.Ch., C.A. No. 5549–NC, Brown, V.C. (1978), mem. op. at 19, 1978 WL 2506. Accord, *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 383 (7th Cir.1990).

The internal affairs doctrine requires that the state that has created the corporation be the only state whose law controls the relationships among the corporate entity, directors, officers and stockholders. This concept implicates federal due process, commerce clause and full faith and credit clause considerations because in the absence of such a rule, a corporation would be subject to the risk of inconsistent judgments by virtue of its being amenable to service of process in different jurisdictions. *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987). And the Delaware Supreme Court has held that the "application of the internal affairs doctrine is mandated by [these] constitutional principles, except in 'the rarest situations'." *McDermott Inc. v. Lewis*, Del.Supr., 531 A.2d 206, 217 (1987).

Defendants argue that the case at bar presents one of these "rarest situations". They contend that because both Bordes and Rosenmiller, collectively representing 100% of the voting stock of GMI, bound themselves and their transferees to submit to the law of New Jersey for interpretation of the Agreement, there is no risk of an inconsistent judgment.

Although no court has addressed this specific issue and it may not be entirely clear what the United States and Delaware Supreme Courts meant by the reference to a "rarest situation", this dispute cannot present such an instance. The language that precedes the "rarest situation" exception in the *McDermott* opinion states:

> So long as each State regulates voting rights only in the corporations it has created, each corporation will be subject to the law of only one state. No principal [sic] of corporation law and practice is more firmly established than a State's authority to regulate domestic corpora-

tions, including the authority to define the voting rights of shareholders. . . .

*McDermott Inc. v. Lewis,* Del.Supr., 531 A.2d 206, 217 (1987), quoting *CTS Corp. v. Dynamics Corp. of America,* 481 U.S. 69, 89, 107 S.Ct. 1637, 1649, 95 L.Ed.2d 67 (1987). The present dispute falls squarely within the internal affairs doctrine. The factual circumstance that all voting stockholders chose New Jersey law is not sufficient to remove the dispute from that doctrine.

Delaware therefore has a greater interest than does New Jersey in regulating stockholder voting rights in Delaware corporations. The parties' express choice of New Jersey law cannot be controlling as to this issue.

### III.

■ Defendants also assert that in the absence of an express choice by the parties, New Jersey law would still be applied. Their rationale is that the incorporation of GMI in Delaware provides the only nexus between the Agreement and Delaware, whereas the ties to New Jersey abound. They note that GMI's principal place of business is in New Jersey, and much of its business is conducted in New Jersey. They also rely on *Gries Sports Enterprises, Inc. v. Modell,* 15 Ohio St.3d 284, 473 N.E.2d 807 (Ohio 1984), wherein the Ohio Supreme Court held that a voting agreement between stockholders of a Delaware corporation would be tested under Ohio law because Ohio bore a more significant relationship to the contract than did Delaware.

The reasoning of the *Gries* case is unpersuasive. The decision rested on a mere tallying of each state's contacts with the parties and their contract, without any meaningful analysis of the constitutional and corporate law issues that mandate the application of the doctrine of *lex incorporationis.* The Delaware Supreme Court, when faced with the argument that local interests outweigh the incorporating state's interest in regulating the internal affairs of a domestic corporation, rejected the concept and expressly declined to erode the principle of the internal affairs doctrine.

*McDermott Inc. v. Lewis,* Del.Supr., 531 A.2d 206, 216 (1987). Defendants have not presented any reasonable basis for this Court to deviate from the rule in *McDermott* and their theory was expressly rejected by the Delaware Supreme Court.

### IV.

■ In summary, the law of Delaware must control the regulation of voting for the election of directors of a Delaware corporation by virtue of the internal affairs doctrine. The application of Delaware law renders the voting restriction provisions in the *Agreement* unenforceable because it expired on June 30, 1986, pursuant to the terms of 8 *Del.C.* § 218.

Defendants' motion for summary judgment on this issue must therefore be denied.

■ Although plaintiffs filed several other motions, they did not cross-move for summary judgment on the issue of the validity of the voting restrictions. They are, however, entitled to a decree of summary judgment invalidating the voting restriction. *Bank of Delaware v. Claymont Fire Company No. 1,* Del.Supr., 528 A.2d 1196, 1199 (1987).

### V.

■ Plaintiffs' motion for summary judgment on the issue of whether a custodian should be appointed must, however, be denied because the present status of the Delaware law on summary judgment would not likely permit it to be granted at this time.

It seems clear that at the November 15, 1990 annual stockholders meeting either there was no election of directors because of the deadlock (each side holding 50% of the outstanding voting shares) or if an election occurred, Mr. Rosenmiller's vote was obtained by trickery. What actually occurred is disputed, however.

Delaware law still precludes the granting of summary judgment if there is a disputed material fact. *Gilbert v. El Paso Company,* Del.Supr., 575 A.2d 1131 (1990); *Empire of America Relocation Services, Inc.*

*v. Commercial Credit Company,* Del. Supr., 551 A.2d 433 (1988), but Cf. *Kellam Energy, Inc. v. Duncan,* 668 F.Supp. 861 (D.Del.1987); *Hammond v. Colt Indus. Operating Corp.,* Del.Super., 565 A.2d 558 (1989). Plaintiffs' motion for summary judgment is therefore denied.

In any case, the whole issue of what occurred at the November 15, 1990, annual meeting of stockholders will shortly become moot because the 1991 annual meeting is due to be held next month.

Although the parties have spent a great deal of time in discovery disputes and in distasteful name calling, this does not obscure the undisputable fact that the stockholders are hopelessly deadlocked.

This Court therefore will view with strong disfavor any effort to postpone the 1991 annual meeting or any conduct at the annual meeting that departs from scrupulous fairness. If, at that meeting, the obviously evenly divided stockholders again fail to elect directors, this Court will have no hesitancy doing what it will likely have to do to end this intolerable deadlock: appoint a custodian for the corporation pursuant to 8 *Del.C.* § 226.

Any other pending motions are denied.

IT IS SO ORDERED.